IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Crowvision, Inc., <br><br> Plaintiff, <br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No. 25-cv-1697 |

## COMPLAINT

Plaintiff, Crowvision, Inc. ("Plaintiff"), by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its Complaint against The Partnerships and Unincorporated Associations identified on Schedule A (collectively referred to as "Defendants") states as follows:

### ALLEGATIONS COMMON TO ALL COUNTS

**Nature of the Case**

1. Plaintiff uses and is the owner of the federally registered trademarks: U.S. Registration Nos. 2,440,789, 4,041,346, 4,628,958, 5,475,782, 7,000,681, 2,459,492, 4,041,347, 4,628,957, 5,475,783, 7,000,682. True and correct copies of the registration certificates for the above trademarks are attached as **Exhibit A** (the "Crow Trademarks").

2. Plaintiff uses and is the owner of the federally registered copyrights: U.S. Registration Nos. PA PAU001813537, PA0000811716, PAU001696542. True and correct copy of the registration certificates for the above copyrights are attached as **Exhibit B** (the "Crow Copyrights").

3. This action has been filed to combat the online trademark and copyright infringement and counterfeiting of Defendants, who trade upon Plaintiff's valuable intellectual property including the Crow Trademarks, and Crow Copyrights (collectively the "Crow Intellectual Property") by selling, and/or offering for sale, unauthorized, unauthentic, and counterfeit products in connection with the Crow Trademarks, as well as to stop and prevent Defendants' selling of unauthorized products that use, are based on, and/or are derived from, the Crow Copyrights through the use, manufacture, offer to sell, and sale of unauthorized and infringing products (the "Unauthorized/Infringing Goods").

4. Defendants use and operate fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases").

5. Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Unauthorized/Infringing Works to unknowing consumers.

6. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation such that Defendants infringement arises out of the same transaction, occurrence, or series of transactions or occurrences.

7. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operations.

---

[1] The e-commerce store URLs are listed on Schedule A under the Online Marketplaces.

8. Defendants further utilize images from Plaintiff's website in conjunction with the sale of products with the same or similar appearance as those sold by Plaintiffs, further causing confusion among customers.

9. Plaintiff is forced to file this action to combat Defendants' infringement counterfeiting of its Crow Intellectual Property, as well as to protect unknowing consumers from purchasing Unauthorized/Infringing Works over the Internet.

10. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, loss of control over the creative content and tarnishment of its valuable intellectual property, as a result of Defendants' actions and seeks injunctive and monetary relief.

## The Parties

11. Crowvision, Inc. is a California corporation that produced the cult classic film, The Crow.

12. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff.

13. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax intellectual property enforcement systems or redistribute products from the same or similar sources in those locations.

14. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A, attached hereto.

16. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.

## Jurisdiction

17. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1121, the Copyright Act 17 U.S.C. § 501, et seq., 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

18. This Court has personal jurisdiction over Defendants since Defendants transacted business relative to the claims made within the State of Texas and within this District and because Defendants purposefully availed themselves of the benefits and privileges of conducting business activities within the State of Texas and within this District.

19. More particularly, Defendants utilize online retail accounts to promote, offer to sell and sold the Unauthorized/Infringing Works in Texas and to Texas residents, and provide for the shipment of the Unauthorized/Infringing Works to customers in Texas.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are foreign defendants and are subject to this Court's personal jurisdiction as alleged above.

## Factual Background

*Plaintiff's Products Branded Under The Crow Intellectual Property*

22. The Crow is a 1994 American thriller film, directed by Alex Proyas, based on the graphic novel of the same name by James O'Barr. The Crow tells the story of Eric Draven, a

4

murdered man who comes back to life as an undead avenger of his and his fiancée's murder. Featuring Brandon Lee as the bloodthirsty antihero, the film was popularized by industrial bands and played a role in the 90s goth revival. Additionally, the film provided a melancholic effect on viewers as it was Brandon Lee's final appearance before he was fatally wounded by a prop gun during filming. When The Crow was released in May 1994, it topped the box office charts and grossed more than $50 million domestically. Reviewers praised the film's action and visual style. Rolling Stone magazine went as far as calling The Crow a "dazzling fever dream of a movie."

23.     The Crow was nominated for many awards, including the 1995 MTV Movie Award for Best Movie and the 1995 Saturn Award for Best Horror Film. Most notably, the film won the 1994 Fangoria Chainsaw Awards for Best Wide-Release Film, Best Soundtrack, and Brandon Lee posthumously won Best Actor. Additionally, the success of The Crow has led to a media franchise that includes five films and a television series. On August 23, 2024, a modern adaptation of the 1995 film premiered, featuring Bill Skarsgaard.

24.     Since then, Plaintiff has marketed, advertised, sold, and offered for sale various goods under The Crow Intellectual Property.

25.     The Crow Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. The trademarks attached hereto as Exhibit A constitute *prima facie* evidence of the Crow Trademarks' validity and of Plaintiff's exclusive right to use the Crow Trademarks pursuant to 15 U.S.C. § 1057(b).

26.     Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Crow Copyrights to the public.

27. Plaintiff markets and sells a variety of products that feature the Crow Trademarks and copyrighted material.

28. Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing the Crow Trademarks and copyrighted material are reproduced to the highest quality standards.

29. Based on that the Crow Trademarks and copyrighted material have been in continuous and substantially exclusive use, as well as being the subject of the expenditure of substantial resources in promoting and advertising, there is substantial and valuable goodwill associated with the Crow products, and Plaintiff's customer services respecting its products.

30. Through its marketing, diligence, services and commitment to excellence, Plaintiff has established a celebrated and high-distinguished brand.

31. Through its marketing, diligence, services and commitment to excellence, Plaintiff has established the Crow Trademarks as famous trademarks within the meaning of 15 U.S.C. §1125(c)(2), and each contributes to Plaintiff's celebrated and high-distinguished brand.

32. The Crow IP is a critical component of consumer's ability to readily identify Plaintiff's goods.

33. The Crow Intellectual Property portfolio is an extremely valuable asset to Plaintiff.

34. Plaintiff maintains authorized sellers of products that utilize the Crow Intellectual Property for the United States. By only permitting authorized sellers to use and sell products featuring the Crow Trademarks and copyrighted material in the United States, Plaintiff is able to maintain controls over the seller's quality commitments, customer service requirements, and product handling. These restrictions are important and valuable to Plaintiff to ensure that customers of Crow products not only receive genuine Crow goods, but also enjoy the appropriate

high level of service and customer care that is represented by the Crow brand and its goodwill. It also ensures that Plaintiff is able to provide sufficient inventory to its authorized sellers so that the sellers are able to fulfill orders for the product, and not cancel orders.

35. Plaintiff has made substantial effort in protecting its interests in the Crow Intellectual Property. Only Plaintiff and Plaintiff's licensees and/or individuals or businesses it expressly authorizes are entitled to manufacture, import, export, advertise, offer for sale, derive from, or sell any goods utilizing or featuring the Crow Trademarks and/or copyrighted material.

36. Plaintiff has not licensed or authorized any Defendant to manufacture, import, export, advertise, offer for sale, derive from, or sell any goods utilizing or featuring the Crow Intellectual Property.

*Defendants' Wrongful Acts*

37. The success of the Crow brand has resulted in its significant counterfeiting and infringement.

38. Plaintiff actively works with a brand protection program to investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers.

39. Recently, Plaintiff has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Unauthorized/Infringing Works to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in an increase in the shipment and importation of unauthorized products into the United States.

40. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to

routinely use false or inaccurate names and addresses when registering with these e-commerce platforms.

41. Defendants have targeted sales to Texas residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Texas, accept payment in U.S. dollars and have sold Unauthorized/Infringing Works to residents of Texas.

42. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include misleading images that make it very difficult for consumers to distinguish such stores from an authorized retailer.

43. Plaintiff has not licensed or authorized Defendants to use of the Crow Trademarks or copyrighted material and none of the Defendants are authorized retailers of genuine Crow products.

44. More specifically, Defendants are not authorized sellers of Crow branded products in the United States. Defendants operate outside of Plaintiff's authorized seller network and are not subject to the same levels of control and requirements as Plaintiff's authorized sellers. Because of that, Plaintiff is not able to demand the same level of customer care and product handling that it can of its authorized sellers. As a consequence, customers purchasing from Defendants can have negative purchasing experiences which damages Plaintiff, its Crow brand, and its goodwill.

45. Defendants know that they are not authorized dealers of Crow products, and through the use of the Crow Trademarks and/or copyrighted material, Defendants intend to induce customers to purchase from them, rather than from authorized dealers thereby damaging Plaintiff including by damaging Plaintiff's ability to maintain its authorized dealer network and the quality controls associated with it.

46. Many Defendants also deceive unknowing consumers by using the Crow Trademarks and/or copyrighted material without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Crow products.

47. Many Defendants further package their products in packaging that appears identical or nearly identical to the product packaging used to sell genuine products under the Crow Trademarks and/or copyrighted material. The false packaging is further efforts to confuse customers that believe they have purchased genuine products and is intended by Defendants to try and pass off the infringing products while evading detection.

48. Defendants routinely sell their infringing products at price points that are well below the value of genuine Crow products. The reduced prices, packaging and product images, and use of the Crow Trademark and/or copyrighted material are used by Defendants to trick customers into purchasing an infringing and inferior product and lead customers to undervalue the genuine goods, leading to customer generate and harbor negative impressions of Plaintiff and damage Plaintiff's good will.

49. Plaintiff extensively researches the market and identifies those entities, such as Defendants, that are not approved vendors of genuine Crow products.

50. Defendants are not approved vendors.

51. Defendants' sales of products at below-value prices further establish Defendants' products are infringing and counterfeit.

52. Other e-commerce stores operating under Seller Aliases omit using the Crow brand name in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Crow products.

53. E-commerce store operators, like Defendants, commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

54. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized/Infringing Works. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators, like Defendants, to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

55. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized/Infringing Works for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the

Unauthorized/Infringing Works were manufactured by and come from a common source and that Defendants are interrelated.

56. On information and belief E-commerce store operators like Defendants are in regular communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, tro.saibeiip.com, kaidianyo.com, and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

57. Counterfeiters, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators, like Defendants, maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, it has been reported that financial transaction logs from previous cases involving claims similar to the present claims indicate that off-shore counterfeiters regularly movefunds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

58. On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized/Infringing Works in the same transaction, occurrence, or series of transactions or occurrences.

59. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the Crow Trademarks and copyrighted material in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized/Infringing Works into the United States and Texas over the Internet.

60. Defendants' unauthorized use of the Crow Trademarks and Copyright in connection with theadvertising, distribution, offering for sale, and sale of Unauthorized/Infringing Works, including the sale of Unauthorized/Infringing Works into the United States, including Texas, is likely to cause and has caused harm, loss of goodwill, confusion, mistake, and deception by and among consumers.

61. Defendants' wrongful acts and/or willful infringements have caused and will continue to cause irreparable harm to Plaintiff unless permanently enjoined, for which Plaintiff has no adequate remedy at law.

62. Defendants are profiting and will continue to profit from their unlawful actions.

63. Defendants' unlawful actions are causing and will continue to cause Plaintiff monetary damages in an amount presently unknown, but to be determined at trial.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

64. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

65. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Crow Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.

66. The Crow Trademarks are highly distinctive.

67. Consumers have come to expect the highest quality from products offered, sold, or marketed under the Crow Trademarks.

68. The Defendants identified in Schedule A have sold, offered to sell, marketed, distributed, and advertised, and are still actually or planning on selling, offering to sell, marketing,

distributing, and advertising products using counterfeit reproductions of the Crow Trademarks without Plaintiff's permission.

69. Plaintiff's United States Registrations for the Crow Trademarks [Ex. A] are in full force and effect.

70. On information and belief, Defendants have knowledge of Plaintiff's rights in the Crow Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Crow Trademarks.

71. Defendants' willful, intentional and unauthorized use of the Crow Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Unauthorized/Infringing Goods among the general public.

72. Defendants' activities constitute willful trademark infringement and counterfeiting under the Lanham Act and particularly, 15 U.S.C. § 1114.

73. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Crow Trademarks.

74. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Unauthorized/Infringing Goods.

75. As a result of Defendants infringement, Plaintiff is entitled to recover three times the amount of all of each Defendants' profits from the Defendants' infringement of the Crow Trademarks together with its reasonable attorney's fees.

## COUNT II
## COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106 AND 501)

76. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

77. Plaintiff's Crow Copyrights constitute an original work and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, et seq.

78. Plaintiff is the owner of the Crow Copyrights. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Crow Copyrights. Plaintiff's Crow Copyrights are protected by the registration attached hereto as Exhibit B, which were duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been, and still is, the owner of all rights, title, and interest in Plaintiff's Crow Copyrights, which have never been assigned, licensed, or otherwise transferred to any Defendant.

79. Plaintiff's Crow copyrighted material, or products embodying them, is published and sold on the Internet and available to Defendants online. As such, Defendants had access to Plaintiff's Crow copyrighted material via the Internet.

80. Without authorization from Plaintiff, or any right under the law, Defendants have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating Plaintiff's Crow copyrighted material on e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized/Infringing Works. Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of Plaintiff's Crow copyrighted material. Such conduct infringes and continues to infringe Plaintiff's Crow Copyright in violation of at least 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

81. Defendants reap the benefits of the unauthorized copying and distribution of Plaintiff's Crow copyrighted material in the form of revenue and other profits that are driven by the sale of Unauthorized/Infringing Works.

82. Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized/Infringing Works that capture the total concept and feel of Plaintiff's Crow copyrighted material.

83. On information and belief, the Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

84. The Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

85. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law.

## COUNT III
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))

86. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

87. With respect to the Defendants identified in Schedule A, Defendants' promotion, marketing, offering for sale, and sale of Unauthorized/Infringing Goods has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized/Infringing Goods by Plaintiff.

88. With respect to the Defendants identified in Schedule A, Defendants' promotion, marketing, offering for sale, and sale of Unauthorized/Infringing Goods has caused dilution by blurring with Plaintiff.

89. By using the Crow Trademarks in connection with the sale of Unauthorized/Infringing Goods, Defendants create a false designation of origin and a misleading representationof fact as to the origin and sponsorship of the Unauthorized/Infringing Goods.

90. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized/Infringing Goods to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

91. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of the Crow brand.

92. As a result of Defendants infringement, Plaintiff is entitled to recover all of each Defendants' profits from the Defendants' infringement of the Crow Trademarks.

93. As a result of Defendants' counterfeiting, Plaintiff is entitled to collect, at Plaintiff's election, statutory damages instead of Defendants' profits.

94. Defendants' counterfeiting was willful entitling Plaintiff to recover from each Defendant the statutory maximum of $2,000,000 per counterfeit mark infringed.

95. Defendants' counterfeiting makes this case exceptional, entitling Plaintiff to its reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants Identified in Schedule A as follows:

1. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using the Crow Intellectual Property or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Crow product or is not authorized by Plaintiff to be sold in connection with the Crow Intellectual Property;

b. using the Crow Trademarks and/or copyrighted material or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' products are approved by Plaintiff;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine Crow product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Crow Intellectual Property;

d. committing any acts calculated to cause consumers to believe that Defendants' Unauthorized/Infringing Works are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which

      bear Plaintiff's Crow Trademarks and/or copyrighted material, or any reproductions, counterfeit copies or colorable imitations thereof;

  f.  disposing of, destroying, moving, secreting, relocating, and/or transferring any and all of Defendants' Unauthorized/Infringing Works, without Court direction; and

  g.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs;

2.  Enter an Order, upon Plaintiff's request, those with notice of the injunction, including without limitation, any online marketplace platforms such as eBay, AliExpress, Wish.com, Amazon, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and Unauthorized/Infringing Works bearing the Crow Trademarks and/or copyrighted material;

3.  Enter an Order that Defendants and any and all persons controlled by or acting in concert with Defendants to be required to deliver up to Plaintiff for destruction all goods, works, packages, and any other written or printed materials (including electronic files) that bear or depict the Crow Trademarks and/or copyrighted material, or any reproduction, counterfeit, copy, or colorable imitation of the same, or that are otherwise in violation of this Court's order issued pursuant hereto, and all means for making the same;

4.  For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c);

5. That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6. For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered copyrights pursuant to 17 U.S.C. §501; and otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7. Find that this is an exceptional case and award Plaintiff the attorneys' fees, costs, and disbursements, with interest, expended in connection with any actions taken to investigate and confirm the claims made herein pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 505 or otherwise by law;

8. Find that Defendants knowingly and willfully engaged in deceptive trade practices and awarding Plaintiff its costs and attorneys' fees;

9. Award Plaintiff pre-judgment and post-judgment interest on each and every monetary award; and

10. Award any and all other relief that this Court deems just and proper.

Dated: October 22, 2025                                    Respectfully submitted,

/s/ *Karolina Jozwiak*
Karolina Jozwiak

***One of the Attorneys for Plaintiff,
Crowvision, Inc.***

Matthew De Preter
Sofia Quezada Hastings
Karolina Jozwiak
ARONBERG GOLDGEHN DAVIS & GARMISA

225 W. Washington St. Suite 2800
Chicago, IL 60606
312-755-3139
cdepreter@agdglaw.com
shastings@agdglaw.com
kjozwiak@agdglaw.com